IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MUTIU OLAWALE GIWA,** | |
| Plaintiff, | Case No. 10 C 8255 |
| v. | Hon. Harry D. Leinenweber |
| **OFFICER TUCKER,** | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Mutiu Olawale Giwa (hereinafter, the "Plaintiff"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendant Tucker, a lieutenant at the Cook County Jail, violated his constitutional rights by subjecting him to excessive force. More specifically, Plaintiff alleges that on September 16, 2010, when he was lined up to be transferred to Cermak Health Services Hospital, Defendant Tucker refused to loosen his handcuffs when Plaintiff complained that they were too tight and aggravating the site of a previous gunshot wound. Plaintiff also alleges that Tucker pulled him out of line by the arm and injured his shoulder and arm.

Presently before the Court is Defendant Tucker's Motion for Summary Judgment [#43]. For the reasons herein, the Motion is granted.

**I.  STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information*

*Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

### A. Local Rule 56.1 (N.D. Ill.)

Defendant filed statements of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with his Motion for Summary Judgment, Defendant included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [#45-1], as required by Local Rule 56.2. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that

>  require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff failed to file a proper response to Defendant Tucker's Statements of Uncontested Facts. While he submitted a response to each numbered statement of fact, he admits the vast majority of Defendant's proposed statements of fact, and for those he denies, he cites to no

specific evidence in the record that supports his claims as required. *Dent v. Bestfoods,* (Case No. 02 C 7922) 2003 WL 22025008, at *1 n.1 (N.D. Ill. August 27, 2003) (St. Eve, J.); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). Consequently, Plaintiff's responses to Defendant Tucker's proposed undisputed facts are not in compliance with Rule 56.1(b)(3)(A).

A motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). As Plaintiff has failed to do so, Defendant Tucker's proposed undisputed facts are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

Because Plaintiff is proceeding *pro se*, the Court will grant him considerable leeway and take into account the factual assertions he makes in his summary judgment materials. In order to meet its obligation to view the record in the light most favorable to the non-movant, the Court has supplemented the Defendant's statement of facts with additional facts Plaintiff asserted during his deposition and in his opposing brief. However, the Court will entertain Plaintiff's factual statements only insofar as he could properly testify about the matters asserted. *See* FED. R. EVID. 602.

## II. FACTS AND BACKGROUND

Mutiu Olawale Giwa ("Plaintiff"), was admitted to the Cook County Department of Corrections (the "CCDOC") as a pre-trial detainee on August 26, 2010, and currently remains there as a pre-trial detainee. (Def. Ex. A at ¶ I). Defendant Earl Tucker is currently employed by the Cook County Sheriff's Office and holds the rank of Lieutenant. Defendant Tucker was employed in this capacity and held the same rank on the date of September 16, 2010, the date of the alleged incident. (Def. Ex. B at ¶ 1).

Plaintiff was housed within Division 1, Tier G4, of the CCDOC, which is a maximum-security facility for male detainees. The residents of Division 1 are typically deemed to be violent, dangerous, and/or habitual criminals. (Def. Ex. B at ¶ 2), (Def. Ex. C at 13). Plaintiff was scheduled to go to Cermak Health Services Hospital ("Cermak") for medical treatment pursuant to a medical request made by Plaintiff. (Def. Ex. A at ¶ IV). Cermak is a less secure facility than Division 1 of CCDOC. (Def. Ex. B at ¶ 5). During the morning hours of September 16, 2010, Plaintiff was one of approximately 15 detainees who were brought to the basement holding area of Division 1 for transport to Cermak. At the time Plaintiff was brought to that holding area, he was not handcuffed. (Def. Ex. B at ¶ 5 and see Def. Ex. C at 16).

Defendant Tucker was assigned to the basement holding area of Division 1, to prepare detainees for transport to Cermak in an orderly, secure manner. His duties as a correctional lieutenant

included the maintenance, preservation and restoration of institutional order and security at all times, including during this transport process. (Def. Ex. B at ¶¶ 1, 3). Upon arrival in that holding area, all detainees were handcuffed in front and placed in single file, parallel lines facing the same direction. The detainees were temporarily handcuffed in order to maintain institutional order within CCDOC and stem security concerns as maximum-security detainees were transported to Cermak, a less secure facility. Such security concerns include, but are not limited to, keeping the detainee from fleeing, causing a disturbance, or fighting with other detainees or the deputy sheriffs. (Def. Ex. B at ¶¶ 6, 8).

Once all detainees were handcuffed, they were to be walked by the approximately 3 to 4 deputy sheriffs on duty, to Cermak. (Def. Ex. B at ¶ 7). The walk from the basement holding area of Division 1 to Cermak takes approximately 30 to 45 minutes, and goes through other detention facilities within the CCDOC, via a winding basement tunnel. (Def. Ex. B at ¶ 7). Upon Plaintiff's arrival in that holding area, Plaintiff was handcuffed in front of his person by some unknown deputy sheriff, in the exact same manner as the other 14 detainees being prepared for transport to Cermak. (Def. Ex. B at ¶ 11). At the time Plaintiff was handcuffed, he did not have a doctor's note or medical permit requiring that he not be

handcuffed, or be accommodated to be handcuffed in any special way. (Def. Ex. B at ¶ 11).

After being handcuffed, Plaintiff stepped out of line, and faced outside of the line rather than forward, as all the other detainees were doing and as he had been instructed to do. (Def. Ex. B at ¶ 13). Defendant Tucker told Plaintiff to get back into the line and face forward. (Def. Ex. B at ¶ 13). Plaintiff refused to listen to Defendant Tucker, ignoring his orders, and maintaining his position outside of the line, facing outward rather than forward. (Def. Ex. B at ¶ 13).

Plaintiff's behavior interfered with Defendant Tucker's ability to execute his penological duties, including conducting an orderly transfer of detainees from Division 1 to Cermak. (Def. Ex. B at ¶ 14). Plaintiff was the only detainee engaged in this disruptive behavior at the time, and his conduct posed a serious security risk, as it threatened to cause incitement of the other detainees present, and endangered Plaintiff, the other detainees, as well as Defendant Tucker and other deputy sheriffs. (Def. Ex. B at ¶ 15, and see Def. Ex. C at p. 23). Only after being handcuffed, removing himself from the line, and disobeying Defendant Tucker's orders to get back into line, did Plaintiff complain about his handcuffs being too tight. (Def. Ex. C at p. 20).

When Plaintiff prolonged his insubordination by refusing to acknowledge Defendant Tucker's instructions, Defendant Tucker approached Plaintiff, and attempted to turn him into the Cermak line, single file and facing the same direction as the other detainees. (Def. Ex. B at ¶ 13).

Plaintiff actively resisted Defendant Tucker's attempts in that he "held [his] ground," telling Defendant Tucker that he would not listen to him, not allowing himself to be turned, and pulling his arm away. (Def. Ex. C at p. 26). Subsequent to Plaintiff's resistance and refusal to obey orders, Defendant Tucker removed Plaintiff from the Cermak line and removed his handcuffs. (Def. Ex. A at ¶ IV).

Plaintiff was then re-handcuffed, this time by Defendant Tucker, and placed in the holding cell within the basement of Division 1 while the remaining 14 detainees were transported to Cermak. (Def. Ex. B at ¶ 27). Plaintiff waited in the holding cell for approximately one hour to calm down before being transported to Cermak to seek any medical treatment. (Def. Ex. A at ¶ IV).

When Plaintiff was transported to Cermak, his handcuffs were loose, and the pain and numbness had subsided. (Def. Ex. C at pp. 31 and 33). After Plaintiff suffered his gunshot wound, he could straighten out his arm a little bit, and he testified in deposition that his range of motion after the incident underlying this suit is similar. (Def. Ex. C at p. 35). Plaintiff suffered

numbness in his hand and arm after he was shot. (*Id.* at pp. 36-37). Plaintiff had no injury after he was cuffed on September 16, 2010, that he did not have as a result of the gunshot wound. (*Id.* at p. 42). Any pain Plaintiff felt went away because of the treatment (ibuprofen) he received at Cermak. (*Id*. at p. 37).

### III. ANALYSIS

Defendant Tucker argues that the evidence demonstrates that his use of handcuffs was reasonable that Plaintiff suffered no serious physical injury, and that he is entitled to qualified immunity for his refusal to loosen Plaintiff's handcuffs on September 16, 2010.

Initially, the Court notes that Defendant Tucker argues that the Fourth Amendment use of force on arrest standard applies in this case. However, his reliance on Fourth Amendment case law relating to the use of force in effecting an arrest is misplaced. In the jail context, the use of force qualifies as "excessive" for the purpose of the Fourteenth Amendment when it entails the "'unnecessary and wanton infliction of pain.'" *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 667 (7th Cir. 2012) (*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986)). When jailers are accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010).

Factors relevant to that inquiry include whether the jail officials perceived a threat to their safety and the safety of other inmates, whether there was a genuine need for the application of force, whether the force used was commensurate with the need for force, the extent of any injury inflicted, and whatever efforts the officers made to temper the severity of the force they used. *Rice*, 675 F.3d at 668; *Whitley*, 475 U.S. at 321; *see also Forrest v. Prine*, 620 F.3d 739, 744-45 (7th Cir. 2010); *Lewis v. Downey*, 581 F.3d 467, 475-77 (7th Cir. 2009).

Whether Plaintiff's claims are viewed under excessive force or deliberate indifference to a serious physical condition analysis, both approaches result in the same question – whether the Defendant knew that his refusal to loosen Plaintiff's handcuffs resulted in unnecessary and wanton infliction of pain and physical injury to Plaintiff. *See Santiago*, 599 F.3d at 757 (to establish a claim of excessive force, a prisoner "must have evidence that 'will support a reliable inference of wantonness in the infliction of pain'") (citation omitted); *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012)("deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'")(citation omitted).

It is clear from the record that the force employed by Defendant Tucker was reasonable, and not intended to wantonly or unnecessarily inflict pain. Defendant Tucker did not cuff Plaintiff, but was one of the officers charged with moving a large group of detainees from a high security area of the jail to Cermak Health Services, a lower security area of the jail. While it is unclear from the record whether Defendant Tucker knew of Plaintiff's previous gunshot injury (Tucker insists he did not know, and Plaintiff testified in deposition that he told Tucker of the injury (see Plaintiff's dep., p. 22)), it is undisputed that Defendant Tucker's behavior during the incident was reasonable.

Defendant Tucker was charged with moving fifteen detainees to Cermak. The detainees were all cuffed in front and the trip took thirty-five to forty minutes through tunnels that wind under the Cook County Jail. Plaintiff turned out, stepped out of line, and refused to comply with orders given by Defendant Tucker and others, designed to restore order so the detainees could complete their trip to Cermak. Defendant Tucker was concerned that Plaintiff's behavior could incite other detainees to refuse to follow orders, further disrupting order, and preventing Defendant Tucker from completing his duties.

When he attempted to turn Plaintiff back into line by placing his hand on Plaintiff's arm to turn him back into line, Plaintiff refused, actively resisting and pulling his arm away. In his

deposition, Plaintiff testified that he held his ground. (Plaintiff's dep. p. 26). Because Plaintiff refused to comply, Defendant Tucker removed him from line and placed him in a holding cell, to cool off. Defendant Tucker then removed Plaintiff's handcuffs, placed him in a holding cell, re-cuffed him, and sent to Cermak approximately an hour later. Plaintiff testified in deposition that when he was transported to Cermak an hour later, the cuffs were loose and the pain and numbness he had felt had subsided.

The Seventh Circuit has previously discussed how important it is that prisoners follow orders: "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. . . . Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." *Lewis v. Downey*, 581 F3d 467, 476 (7th Cir. 2009). Defendant Tucker perceived a threat to order and security and attempted to resolve it with a minimal amount of force. Plaintiff's response was to continue to be combative. Defendant Tucker then removed Plaintiff from the situation, placing him in a holding cell.

The evidence in the record indicates that Defendant Tucker re-cuffed Plaintiff, within an hour had him escorted to Cermak Health

Care, and when Plaintiff went, the cuffs were loose and the pain and numbness he had experienced had abated. The amount of force ultimately used was minimal and efficiently employed in a good faith effort to maintain discipline and jail security and not to maliciously or sadistically cause harm to Plaintiff. In fact, the record indicates that Plaintiff had no further complaints once he was placed in the holding cell, other than that he was delayed from going to Cermak. Therefore, the use of force restored the order Defendant Tucker sought.

Plaintiff has provided no evidence that his preexisting injury was exacerbated by Defendant Tucker leaving him cuffed on September 16, 2010. While Plaintiff testified in his deposition that when Defendant Tucker tried to turn him back into line he heard his shoulder pop, and that his shoulder was dislocated, he also testified that he was resisting Defendant Tucker's attempts to restore order, and that he was taken to Cermak within an hour. While a dislocated shoulder is not a *de minimus* injury, the Court is satisfied that Defendant Tucker used a reasonable amount of force to preserve order and acted reasonably in assuring Plaintiff was no longer a threat while also providing him with medical care within an hour of the incident.

There are no facts in the record that suggest Tucker exercised any force with the intent to cause "malicious and sadistic" harm. In order to survive a motion for summary judgment the detainee must

have evidence that supports a reliable inference of wantonness in the infliction of pain. *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004)(*citing Whitley v. Albers*, 475 U.S. 312, 322 (1992)). Plaintiff has provided none. Accordingly, because no reasonable jury could find that Defendant Tucker subjected Plaintiff to excessive use of force, Defendant Tucker is entitled to judgment.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant Tucker's Motion for Summary Judgment [#43] is granted and the case is dismissed.

**IT IS SO ORDERED.**

                                                      Harry D. Leinenweber, Judge
                                                      United States District Court

**DATE:** 7/19/2012

- 15 -